Bissonnette v. LePage Bakeries Mr. Licton, can you hear me? Yes, can you hear me now? Yes. Yes, we can hear you. Thank you. Thank you very much. I'm sorry for the difficulty. Is this Mr. Licton on the telephone? This is he. Okay, proceed. Thank you. I'm sorry for the problems. I represent the plaintiffs. Defendant LePage Bakery and C.K. Sells are a, quote, motor carrier because through their own employees and contracting with independent contractor franchisees, they deliver products in the stream of interstate commerce to customers in Connecticut and throughout New England, and defendants use motor vehicles as defined in the statute. Now, that's not my words. That's part of the brief that they wrote in a related case called Bokanowski v. LePage Bakery. This is how the defendants, not the plaintiffs, have characterized themselves in order to take advantage of the motor vehicle carrier exception to the Fair Labor Standards Act. But now they come to this court arguing that my plaintiffs do not drive motor carriers and are not delivering goods and services within the flow of interstate commerce in an attempt to avoid the exemption for the transportation workers of the FAA. Can you summarize in just a sentence or two what the test in your view should be for who qualifies as a transportation worker under the FAA? Yes. Yes. I believe the test is that enunciated in Tenney v. in the Tenney case, Tenney Engineering, and because the Second Circuit, you have adopted that test in the Julius Irving case. And in Tenney, which is cited in Julius Irving as approvingly, the court held that the exemption applies to the, quote, class of workers who are actually engaged in the movement of interstate or foreign travel or in work so closely related thereto as to be in practical effect part of it. Now, this standard was reaffirmed by the Third Circuit in Talco and adopted by the Ninth Circuit in Rittman. So I think that that's the operative standard. Now, we don't have to get to the section that says work so closely related thereto, although many of the cases go off on that issue, because my clients actually drive trucks on a daily basis. That's the primary duty of their job, and that is in the record. And it's also in the record of a number of other cases that have been decided around the country involving the same defendant where courts have found that their primary duties are delivery of baked goods and breads to the supermarket shelf and that other duties are ancillary. Counsel, I'm sorry to interrupt you, and it's hard for you to hear. I know I want to ask one question to put to bed the interstate commerce issue. Do the baked goods all come from Connecticut or do they come from other places? We don't believe any of the baked goods come from Connecticut. They all come from other places, and LePage has itself admitted that fact in order to get out of the FLSA motor carrier exemption where the goods have to come from interstate. And in any event, Connecticut is not known as a wheat-growing state. Is that correct? That is correct, Your Honor. All right, continue. And I don't think anyone disputes that. I do want to make clear that... Are you arguing that everyone who works in an industry that is involved in interstate commerce, broadly speaking, in its fullest extent, is a person whose work is in interstate commerce for the purpose of this exception? No. In fact, we concede that if the work is not involved either directly or very indirectly... I'm sorry, directly involved transportation or directly involved working with people who are doing the transporting, then the act does not apply. This exception does not apply. And the courts have made this clear in a number of cases, including the Palco case and other cases. Our position here is that you need not worry about that because our clients are directly involved in transporting goods. They drive trucks every day. That puts them well inside the standard. It would be a closer question if they were supervisors of the truck drivers or they loaded the trucks at the warehouse but didn't go out on the road. As many courts have found in other flower food cases around the country... Why wouldn't we first consider whether someone works in the transportation industry and then decide whether that particular person drives a truck or is involved in things that move? Because to me, the transportation industry is one that pegs its charges and derives its revenue from the movement of goods and people. And what your client does is basically sell goods. Now, those goods have to move. Everything moves. As we're learning, everything moves by truck. But that doesn't mean that everyone who was involved in a business where things are delivered by truck is in the transportation industry. Your client charges, as I understand it, on the basis of how many muffins and how many pieces of bread and everything else and charges for the bread and the muffins and not for the movement of those things. Your Honor, I respectfully disagree. First of all, there is no case, really, that says that you have to be in the transportation industry. In the Amazon cases, which were decided by the First and Ninth Circuit, it was clear that the drivers were driving for Amazon. Amazon is not, I would say, just like the defendants here. They're not in the transportation industry, but they're certainly doing deliveries. It would be anomalous to say that if defendants here hired a company to do their transportation work and deliveries, they would be exempt. But if they do it in-house, they're not exempt. The test is whether they're actually transporting goods in interstate commerce. And that's what the modern appellate court cases say. I don't think there's any question about that. If we're talking about modern cases, I don't know how new something has to be to be modern. The Second Circuit case in Maryland casualty says that the exception is limited to workers involved in transportation industries. And if you look at the examples given in the statute, it's seamen and people in the railway industry. Those are industries in which the industry derives its revenue from moving things, not from selling muffins and breads. Well, Your Honor, respectfully, in the Martins case, which is one of the flower foods cases, which is up on appeal, the court found that TK Sales is a transportation company because they're in the business of transporting these baked goods to the various stores. That's number one. With respect to the issue of sales that you mentioned, there is ample evidence in the record of decisions by some of the other judges looking at the flower foods cases that sales is a negligible, if at all, part of the job because the contract that our clients sign gives the defendants the right to negotiate the prices and the amounts of food that go into the supermarkets, and that's 95 percent of their business. So there's a huge factual question supported by these other flower foods decisions, whether my clients really do any sales at all, where their primary duty is transporting the goods every day to the store, without which there would be no bread on the shelves. That's true. If it wasn't transported, it wouldn't get to the shelves. But the industry that your client is in is not one that charges end customers or even wholesale customers for the transportation of the thing. They charge for the bread and the muffins and the pies and the cakes. That sounds like the bakery business with the bakery industry as opposed to just the transportation industry, which is involved chiefly in the movement of goods and people. But, Your Honor, if you look at the transportation, if you look at this exception that you're creating, it doesn't appear anywhere. Now, it's true it appears in a footnote in Maryland Casualty. I read that case this morning. Maryland Casualty has nothing to do with the transportation of goods or anything like that. It was a footnote where they were trying to say Section 1 applies to people who are in the process of transporting goods in interstate. It was a throwaway footnote. There is no case. I don't know what parts of Second Circuit opinions are throwaways, but Adams cites Maryland Casualty and Adams v. Swansea and says that only workers involved in the transportation industries are transportation workers. Again, only in a footnote and has nothing to do with the case. In the First Circuit and Ninth Circuit and other circuits we cited, like the Amazon cases, the question was whether they're transporting goods within interstate commerce. It's not whether they're in the transportation industry. And there's at least a factual question whether C.K. Sales, one of the defendants, is in the transportation industry because they purport in their filing papers to say they're a motor carrier involved in interstate commerce and that's why they're not subject to the overtime requirements of the FLSA. What motor carriers do is they charge, they derive their revenue from the movement of goods and people. That's what buses do and that's what many truckers do. They sound like transportation workers, but what your client is deriving his revenue from and is charging people for and what people are interested in is the baked goods. They don't care. They aren't paying your client to move them. They just want the end goods. They want stuff to be eaten, not to be transported. Well, they can't eat it unless it's transported. I mean, that's true, but then they can't eat it unless it's baked. And then the people in the bakeries are not in the transportation industry either. Is your position that this court is not bound by footnote 5 in Adams v. Swasey? Yes, and I don't think if you read Adams v. Swasey you'll think that that's what they were trying to say. They were just trying to make a shorthand way of saying that the worker has to be involved in transporting the goods. And that's what all the other circuits have said too. The question under the FAA is whether the person is involved in the transportation of goods interstate. There's nothing that says that has to be a transportation company. Congress could have said that if they wanted to in Section 1, but they didn't. And no case really on the merit has adopted that standard that it has to be the transportation industry. In any event, whether it's the transportation industry or C.K. Sales transporting it as a subsidiary of Flower Foods, they're both doing the same thing. They're responsible for transporting these goods in interstate commerce. And C.K. Sales isn't bashful about asserting this interstate commerce transportation exception when they want to avoid the FLSA. But isn't there a distinction? Counsel, I know it's hard for you to see, but I'm going to sort of wave. Isn't there a difference between transporting goods interstate and transporting goods in interstate commerce? Because just about everything is in interstate commerce. So transporting anything, I mean a pizza delivery person would be transporting goods in interstate commerce because the cheese comes from here and the tomato comes from there. That's a good question, Your Honor. There are cases like the Grubhub case and other cases that say that there is certain kinds of transportation which may not qualify as interstate because the product comes to rest at the restaurant or at the pizza delivery store and that's been transformed. But here, where the product is doing a continuous journey from interstate somewhere out of state into the supermarket and it's part of a continuous journey without real rest. I don't understand why the pizza has been transformed. It's a pizza. The components have traveled in interstate commerce. But it's not coming from out of state. But the pizza is not coming from out of state. The cases have distinguished that difference. That if the product, this is the Amazon case, if the product is coming from out of state, goes to a warehouse and is delivered to the intended consumer, in this case the intended supermarket, it is in interstate commerce and that is what all the cases say. Counsel, your time has expired. You've reserved some time for rebuttal. But we're going to turn to the defendants here who are not on Zoom. What a pleasure. Thank you, Judge Fuller. May it please the court. Tracy Lovett from Jones Day. And I'm accompanied today by my partner Amanda Rice from the Jones Day Detroit office. It is a pleasure to be back. And thank you for your efforts to bring the court back live. I would like to just, if you wouldn't indulge me for two seconds, just clarify two things on the record that I think were inaccurate as spoken by my brother, counsel. The first is that the Martins v. Flowers case is no longer on appeal. That has been remanded back to the district court in light of the Hamrick v. Parts Fleet case, which we submitted on a 28-J letter. The site for the remand order is 852 Fed Apex 519. It's a July 21st remand. And that case has actually had briefs submitted at the district court level. Now, the Parts Fleet v. Hamrick case in the 11th Circuit actually adopts entirely our analysis. So, Judge Jacobs, there are cases at courts apart from the 2nd Circuit and Irvine and Maryland casualty that have held that you look at the transportation industry. We point you to Parts Fleet. And, again, the only other case raising the sort of Section 1 issue within the Flowers food context is Martins. It's been remanded in light of Parts Fleet. But let me ask you this. Your papers are at pains to point out that these drivers have their own business. They have their own business. And that business is nothing but transporting your products to stores. If you look at the business that you say they're in, why isn't that not a transportation business? For a couple of reasons. First, it's more than a transportation business. And this isn't disputed. It's both in the allegations in the complaint and the distributor agreement. You know, to quote from the complaint, the plaintiffs say that they are, quote, engaged in the sale and distribution of baked goods. It's not just transportation. They buy the goods from Flowers. They resell them. And they make money off the profit. Counsel, I am reading, I think, from the complaint that the drivers must cooperate with the company on marketing. They use the company-initiated advertising material. The plaintiffs may not engage in any marketing activity without the prior written consent of the company. And the plaintiffs may not sell products in the territory which are competitive. So it seems to me that everything they do, apart from truck driving, is also controlled by the company. And besides, isn't this issue disposed of in New Prime, that whether they're independent contractors or not, they are still in the transportation business? So two different questions. Let me take the second one first on Prime. In Prime, there was no question that the plaintiffs were truck drivers. They were interstate truck drivers. They were in the transportation industry, to use Judge Jacobs' phrase. The question, and there was no question, that the contract at that issue labeled them independent contractors. The sole legal question was whether a, quote, contract from employment, which is the language in Section 1, extended to an independent contract. We don't dispute that independent contractors fall within the contract of employment. The question is, under these particular- So you don't dispute that they're truck drivers? We don't dispute that they drive trucks. And weren't they truck drivers before they signed these contracts? Didn't they exactly work for the same companies as truck drivers? No, not all of them did. But some did. At least Mr. Bissonnette did. But the nature of their job has changed. If I could just spit this out quickly, there's no dispute of fact over key aspects of what they do that are different from what they did before. The first is that these appellants buy and sell baked goods. They buy them from Flowers. They pick them up at a warehouse. They buy them from Flowers at a set price, and they distribute them at the price determined by the company. Isn't that correct? They sound like deliverers to me, not businessmen. Only for chain accounts, but I don't think that's necessarily relevant. They can set prices for local accounts. But the difference is, too, they also have customer service duties. And this is also alleged in the complaint. They're responsible for shelving. They're responsible for taking out steps. But you determine. The companies determine how the shelving is accomplished. Not all the shelving, but, again, we don't think that's a distinction that matters. You tell them how to put it on a shelf. You tell them what it should look like. The more that plaintiffs do and appellants do that is in addition to the transportation industry, the farther they get from seamen and railroad employees. And remember, that's the limit that Congress set. The question is, what is the duties and the class of work? But how far away is this? I mean, a person who loads airplanes is in the transportation industry, correct? According to One Circuit, yes, that's correct. And so somebody has to unload the airplane. Why isn't the person who unloads the airplane also in the industry? And if that is so, why wouldn't these plaintiffs who shelve, as you say it, but that really taking the stuff off the truck and putting it where it ought to go, why aren't they just like the loaders of an airplane, assuming that they're in the transportation industry? But Judge Jacobs, I think the first point is it's a harder case because in that case with Southwestern Airlines, the airline was without dispute in the transportation industry. The question was, where do these duties fall in terms of the movement of goods? Here we dispute the first fact. But you're arguing that the nature of what they're doing means that they can't really be in the transportation industry, whereas Southwest Airlines suggests that people who load and unload, if they're in the transportation industry, are not outside the orbit of it. I think that's correct. I think what we're saying is you have to be engaged in the channel of interstate transportation in the same way railroad workers are engaged with the railroad and seamen are engaged with the sea lanes. They're actually in the flow of the transportation channel. There are many things that a seaman does that is not aquatic or nautical. The people who work in the kitchens are seamen. The people who entertain the passengers are seamen on a cruise ship. And someone who loads an airplane is in the airplane industry. And somebody who unloads it is also, and my question to you is, why does it take these people outside the orbit of being in the transportation industry, if they're in it to begin with, just because they unload the goods and put it on shelves? I think it's not just that. I think in the example you're giving, the seamen are on the ship that's in the channel of commerce. These people are first not in interstate or foreign commerce. They are completely interstate. Except we agreed and you agreed that the products that they are delivering are interstate. The goods travel interstate. Correct. Then they come to Connecticut. Correct. So why aren't they like the last mile deliverer for Amazon? I think Amazon's a harder case because in Amazon, the Amazon person is closer to the transportation industry. They're literally picking up someone else's goods and delivering it. Here it's different. Again, I don't think you can under discount the value of the fact that these appellants buy the good, they purchase it, and then they resell it. They have a business. But that's an artifact. That's an artifact that you've imposed on the former truck drivers, saying you have to buy the goods. Formally, you just gave them the goods and they put them on the shelf, and you kept an accounting. So you've created this artifact, this artificial plan where they buy the goods from you. Does money transfer every time they pick up bread? With due respect, Your Honor, it's not an artifact. It's a different business. They're franchise owners. They own this territory, unlike a driver does. They can open new accounts. They can open local accounts. Have any of them opened new accounts? And sell it. Your bakery goods? That's not on the record, and I don't think it's relevant. Because the Section 1 is telling you to look at the, quote, contract of employment and the class of workers. This contract of employment gives these appellants new rights, a franchise right over a territory that they never had before. This isn't an artifact. This is a new business. Are they paid for driving? No. They're paid off of sales, and they have equity in their franchise. So if they grow the franchise, they can sell it, and they pocket the difference between the purchase price and the sale price. Because most truck drivers get paid for how many hours they spend behind the wheel, for how many miles they cover. If you want to ship something by ship, it costs a lot more to ship it from San Francisco to Tokyo than it does from New York to Maryland. Because you're being paid by the distance. Correct, and that's another thing that makes these appellants different. They're paid off of the equity in the business and the profit from the sale. Again, there's no dispute. The complaint alleges that they are engaged in the sale and distribution of baked goods. That's, you know, J17 of paragraph 29. They agree that they're in the sales business. And once you start adding a fact like I'm in the sales business, I'm a business owner with equity, you're not a railroad worker. Do you concede, just following up on one of Judge Poole's questions, do you concede that they would be in the transportation business if they had the kind of prior arrangement with flowers that Mr. Bissonnette had? That is to say, he was paid by the hour or by the distance or whatever, and the company provided the truck and told him how much stuff to take where? I think the question of whether they're in Section 1, that's a harder case. But they'd still be entirely interstate, and we would say that takes them outside of Section 1. I understand that. That's a really separate question. And they also would not—it's a hard hypothetical to answer. If they're exclusively a truck driver, Section 1 is telling you to ask if they are like seamen or railroad employees. But doesn't New Prime say that it doesn't make a difference if they're truck drivers or have a contract? Doesn't exactly—doesn't New Prime deal with that very issue? No, not— That you have to look at what they do, not how they are defined? Only for the purpose of deciding if they have a contract for employment. The court did not say anything about how you determine whether someone is within commerce or is a worker like the railroad employee. That was conceded. There was no briefing on that, and there's no issue here about the contract of employment. I'm going to see you in 20 seconds. I have to at least mention that even if you find this question hard, we have clear grounds for affirmance on the state law ground. There is—we independently moved to compel not only under the FAA, but also the state of Connecticut arbitration law. Although Judge Dewey found that, in a footnote only, that Connecticut wouldn't apply because it's not in harmony with the FAA. And we disagree with that for two reasons. The first is that there's no inconsistency with the FAA with the enforcement of state arbitration law. There's legions of cases, and courts have held that those two are consistent. I think what the court was more focused on was the use of the word exclusively in the contract and the distributor—the arbitration agreement that said the FAA had to be exclusively enforced. And I think her error, with due respect, was that she ignored the second half of that sentence, which is at JA117, that you exclusively enforce under the FAA, quote, except as otherwise agreed to by the parties. And the otherwise agreed to as the parties that's relevant here is on JA118, which is that if something is unlawful or unenforceable, the contract says that this provision, quote, shall be enforced to the greatest extent permissible under law. So there's no inconsistency with the court. But there's a contract for what is not consistent between Connecticut law and the FAA. And under the FAA, there is an exception. So you certainly couldn't say that Connecticut law is the same or congruent in that one important particular. But the FAA doesn't prohibit the enforcement of state law. No, it doesn't. The issue is not whether the provision of Connecticut law is prohibited by the federal law. It's whether the two are consistent. And it happens to be consistent if one of them carves out whole industries from arbitration and the other doesn't. Because Connecticut law doesn't require enforcement under the FAA. It's entirely consistent to say you can't enforce under the FAA if you fall with under Section 1. And under Connecticut law to say, but you can enforce under Connecticut law. Well, actually, the contract says that the arbitration will be under the FAA. And then it says you can apply FAA and Connecticut law to the extent it's not inconsistent. That doesn't mean necessarily you can arbitrate under Connecticut law because it says you arbitrate under the FAA. Well, again, the J-118, it says you can enforce it. It says if the rules or this arbitration agreement are unlawful or unenforceable, you shall enforce them to the greatest extent permissible under law. So you think the district court got that issue wrong. But isn't it true that she didn't engage in any thoughtful analysis of the issue, that it was just a footnote in her decision? And it was dicta in any event. I wouldn't this the state law issue. I mean, I. The issue of whether you can enforce this contract under Connecticut law. And she it was dicta because she had already decided that FAA, the exemption doesn't apply, and that she didn't really analyze it even as much as you've done here. And it was merely a footnote. So we really don't have the benefit of her thinking on whether Connecticut law would apply if the FAA didn't. I hesitate to take a line from from 10 minutes ago, but I've never called the district court footnote something that I could just dispense with. It's part of the analytical framework of the decision. And there was no analytical framework about whether Connecticut applied. There was no analytical framework. I know the overall decision had a lot of analysis, but there was no analytical framework about this. There's there's a holding. Well, I'm not I'm kind of in an odd position of defending this holding. It is an alternative grounds. Isn't the analytical framework simple? We have a term consistent and we don't know what it means. But what matters is what the parties mean. But there's been no hearing and no findings as to what the parties mean. So what we turn to is who drafted the contract. And it would be construed against you, wouldn't it? I don't I would disagree with your premise that this is unclear because there are, again, going to the provisions that say that if there is if a provision is unenforceable, you enforce it to the greatest extent under law. And again, there's no inconsistency between enforcement under state law and the FAA. And to the extent there's questions about this, these belong to the arbitrator because this this interpretation. Yes, but there's a cost for the arbitrator. The arbitrator can determine arbitrability except with respect to the application of respect to with respect to a number of things. Well, one of them is the application of the FAA. And that's exactly what we're talking about here. Well, I'm talking about the application of Connecticut law. But if we agree with the district judge's section one analysis, is it your position that we must consider Connecticut law or simply that we should? No, there's no there's no order. There's no sort of constitutional avoidance type doctrine that would require you to to decide the state law question first. If you agree with the district court's FAA analysis, I think that ends the analysis. If you disagree, though, we have raised an alternative grounds. And this isn't an interlocutory judgment. This is a final judgment. And the interlocutory grounds merge into the final judgment. And this is a is a ground for alternative affirmance that we've affirmatively raised. Thank you. So I think in that circumstance, you have to decide it or send it back to the arbitrator. Thank you, counsel, very much. Mr. Lichten, you have three minutes for rebuttal. Are you back on your phone? Let's give it a minute. I know. You know, this is so awful. Okay. Great. Can you hear me now? Yes. Thank you very much. I would like to make four quick points. First, to take this issue up of Connecticut law. The actual contract language says that this arbitration agreement shall be governed by the FAA. And Connecticut law, to the extent Connecticut law is not inconsistent with the FAA, if we are correct in our FAA analysis, then you have a direct and clear inconsistency. And they should not be allowed to now say that doesn't matter and use the Connecticut Arbitration Act. Because, most importantly, they put this provision in to protect themselves. Were it the case that Connecticut, like some other states, started to outlaw class action waivers and things of that like, they didn't want to be stuck with that. They would have preferred to be in federal court. But they have to be held to their own drafting issues. Secondly, with respect to this question of truck drivers and independent contractors, many, although this is not in the record, many independent contractors receive a portion of the revenues for doing their driving of transporting goods. So there's a lot of similarity between them and my clients. Excuse me. When you say they receive a portion of the revenue, you mean a portion of the revenue received by the trucking company for transporting the goods, not necessarily for selling what's on board. Correct. Thank you. Correct. But if they're transporting $100,000 worth of goods, they might get 5 or 10% for the successful delivery of them. So it's not that they get paid by the hour or anything like that. I don't think that's an important part. So you're saying that truckers get a percentage of what it is they're carrying, so that it's really much more profitable to transport watches than it is to transport cabbages. All the time. There are many cases that you'll find that truck drivers who are independent contractors get paid by the poundage of the load, by the quality of the load, or by the value of the load. It's very common. It's not before you right now. I do want to point out that in the Martins case, which has been remanded by the 11th Circuit, it was remanded only on this question of interstate commerce. But Martins made a finding, the judge in Martins, against Flower Foods, the defendants here, that Seacake Sales is a transportation company. And at least there is a good argument that it is. It may not be able to be resolved at this point because Seacake Sales, the subsidiary of Flowers, is only in the business of distributing all this food to the supermarkets and warehouses where they end up. If that's not a transportation industry, I don't know what it is, especially when they try to take advantage of the Motor Carrier Act exception with respect to the FLSA. And finally, the point I wanted to make is that there are a number of references in the record. In these other cases involving Flower Foods, for instance, in Grayberg v. Flower Foods, which is the North Carolina case that was recently settled, the judge said there is scant evidence that sales are the distributor's primary function. And in the Knoll case, the court similarly said the very same thing, that 95 percent of the sales were with chains, and that defendants have primary responsibility for setting the terms, pricing, product, and volume, thus seriously undermining Flowers' contention that sales is a real part of a plaintiff's job. So we contend that on this record, there is ample evidence for you to determine, or at least remand, that the primary function of our clients is the transportation of goods interstate. They may be in a transportation company, but even if they're not, there is nothing in the law that says they have to be. I think, Judge Jacobs, what you were referring to may have been the cases where the people aren't directly transporting the goods, but are supervising people who transport goods. And there, the courts are more careful to say, we want to look at whether they're in the transportation industry. That analysis changes when the person is directly transporting the goods interstate. Those people are subject to be accepted. But wouldn't you agree that it is the easiest way to administer this thing and the fairest, so that you know categorically what's what, if you draw a distinction between a transportation industry that charges for the moving of things and the bakery industry or the watch industry or the cabbage industry? Yes. In fairness, just the opposite, Your Honor, because, for instance, I'm involved in cases of Portillo v. NFI, which is a case in the Third Circuit. There, Trader Joe's uses transportation companies to transport the goods from their warehouses to their stores. Here, the company does it in-house through CKCEL. The work and the interstate transportation nature of the work is the same regardless. I think it would be anomalous to say it depends upon whether they're contracting out the transportation work or doing it in-house. I don't think it's a distinction without a difference, in my humble opinion. Thank you, counsel. I'm sorry, did you have a question? Thank you very much, Your Honor. Thank you both for a very lively argument. We'll reserve decision. Are the attorneys present in the next case? Anthony J. Allegrino and Ruskin Ruscu.